UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VAGNER TAVARES DA FONSECA,** *et al.*,<br><br>**Plaintiffs,**<br><br>v.<br><br>**ALISSA EMMEL, Chief, Immigrant Investor Program Office, United States Citizenship and Immigration Services,** *et al.*,<br><br>**Defendants.** | Civil Action No. 23-3300 (JEB) |

**MEMORANDUM OPINION**

Plaintiffs here are members of the da Fonseca family, foreign nationals residing in Miami. Seeking EB-5 "Immigrant Investor" visas, they made a substantial investment in a U.S. business and submitted the required Form I-526 petitions to the United States Citizenship and Immigration Services in November 2019. Having heard nothing since and tired of waiting, they ultimately brought this suit in July 2023 to compel USCIS to adjudicate their petitions. They contend that the agency has unlawfully delayed the processing of their Form I-526 petitions, which has caused them serious injury, and that USCIS has otherwise acted arbitrarily and capriciously. Defendants now move to dismiss. Having determined that the da Fonsecas' allegations do not carry the day, the Court will grant the Motion.

**I.    Background**

The Court shall briefly canvass the statutory background of the EB-5 Visa Program before turning to the facts at hand. For the latter task, it draws from the Complaint and its

1

attachments, as it must at this stage. See He Depu v. Yahoo! Inc., 950 F.3d 897, 901 (D.C. Cir. 2020).

### A. Legal Background

In 1990, Congress established the EB-5 visa program, making visas available for a certain number of immigrants each year who help create jobs for American workers by investing in American enterprise. See Immigration Act of 1990, Pub. L. No. 101-649, § 121(b)(5), 104 Stat. 4978, 4989 (1990) (codified at 8 U.S.C. § 1153(b)(5)). Two years later, Congress opened a new path to the EB-5 visa: the "Pilot Immigration Program" authorized by Section 610 of the 1993 Appropriations Act, Pub. L. 102-395, 106 Stat. 1828, 1874 (1992) (repealed by EB-5 Reform and Integrity Act of 2022, Pub. L. 117-103, § 103(a), 136 Stat. 1070, 1075 (2022) (codified at 8 U.S.C. § 1153(b)(5)(E))). Under the Pilot Program, immigrant investors could "satisfy the EB-5 employment-creation requirement by creating jobs indirectly" — that is, by making an investment of a certain size through a designated "regional center." Bromfman v. USCIS, 2021 WL 5014436, at *2 (D.D.C. Oct. 28, 2021); see also USCIS, EB-5 Immigrant Investor Pilot Program, https://perma.cc/NTQ8-H7HT. Section 610 had two subsections: § 610(a), which authorized "set[ting] aside visas for a pilot program" in principle, and § 610(b), which specified limits on how long the Pilot Program would run and how many visas could be set aside.

Congress has repeatedly renewed the Pilot Program — now better known as the EB-5 Regional Center Program — by amending § 610(b) each time the period for which it had authorized the Program elapsed. See, e.g., Visa Waiver Permanent Program Act, Pub. L. 106-396, § 402(a), 114 Stat. 1637, 1647 (2000) (extending visa set-aside period to ten years). After authorization lapsed in June 2021, however, Congress declined to amend § 610(b) as it had in the

past and instead pursued more substantial revisions to the Program. The result was the EB-5 Reform and Integrity Act, which introduced various reforms to the EB-5 visa system, including the repeal of § 610 and the reauthorization of the Regional Center Program through 2027. See § 103, 136 Stat. at 1075; 8 U.S.C. § 1153(b)(5)(E) (codifying Act). The Act, notably, was not signed into law until March 15, 2022, which meant that the EB-5 Program's statutory authorization lapsed for a gap of about nine months between June 30, 2021, and that date. See Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 337–38 (D.C. Cir. 2023) (explaining timeline). This lapse is a focus of Plaintiffs' claims.

To apply for an EB-5 visa through the Regional Center Program, immigrant investors must first file a Form I-526 petition. See 8 CFR § 204.6(a); Hulli v. Mayorkas, 549 F. Supp. 3d 95, 98 (D.D.C. 2021). USCIS must then adjudicate the petition before the immigrant investor may apply for a visa granting her conditional lawful-permanent-resident status. Hulli, 549 F. Supp. 3d at 98. After a period of conditional lawful permanent residency, she may file an I-829 petition to remove the conditions, at last becoming an unconditional lawful permanent resident of the United States. Id.

Because the Immigration and Nationality Act limits both the absolute number of visas that may be awarded each year and the proportion of visas that may go to applicants from a given country, demand for visas from certain countries of origin may exceed supply. See 8 U.S.C. §§ 1151–2. When this happens, some applicants must be put on a waiting list. See 8 U.S.C. § 1153(e); 22 CFR §§ 42.52–.54; MTD at 3. This waiting list — at least as judged by median processing times — has grown unusually long in recent years. See ECF No. 2 (Am. Compl.), ¶¶ 3–4. In January 2020, USCIS dropped its prior "first-in-first-out" policy for adjudicating petitions on the waiting list and instead switched to a policy of prioritizing the

processing of petitions from countries where visas are immediately available under the INA's restrictions. See USCIS, USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory (Jan. 29, 2020), https://perma.cc/E484-FVRL. In practice, this policy means that Applicant X — who filed her petition earlier than Applicant Y, but is immigrating from a country that has already met its annual visa cap — may find that Applicant Y has his petition processed first. USCIS's rationale is that because Applicant X would have to wait to be eligible for a visa even if her petition were approved, prioritizing her petition over Applicant Y's does her no good and wastes processing time that could be better spent elsewhere. See id.

    B. Factual Background

Plaintiff Vagner Tavares da Fonseca, a citizen of Brazil, hopes to make a life for himself and his family as lawful permanent residents of the United States. See Am. Compl., ¶ 18; ECF No. 1 (Compl.), Exh. B (Declaration of Vagner Tavares da Fonseca). The da Fonsecas invested $500,000 in an Illinois restaurant through a designated EB-5 regional center, see Am. Compl., ¶ 18, and filed their Form I-526 petition on November 20, 2019. Id., ¶ 2. What followed for Plaintiffs, as for many other applicants, was a long wait. See id., ¶¶ 3, 6 (alleging that USCIS's median I-526 processing time has risen to 58.5 months and that the da Fonsecas have been waiting 43 months). The da Fonsecas are understandably frustrated with waiting. They allege that the delay causes their family injuries of various kinds: financial loss, family separation, professional frustration, stress, and anxiety. See Am. Compl., ¶¶ 51–52; da Fonseca Decl., ¶¶ 13–17. On July 7, 2023, they filed the present suit, seeking to compel USCIS to adjudicate their petition. See Am. Compl. at 13.

The Complaint includes three counts. The first alleges that USCIS has violated its duty under the Administrative Procedure Act, 5 U.S.C. § 555(b), to adjudicate Plaintiffs' Form I-526

petition "within a reasonable time." Id., ¶¶ 31–40. The second alleges that USCIS took action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and thus violated the APA, 5 U.S.C. § 706(2)(A). Id., ¶¶ 41–43. The third is a claim for mandamus relief under 28 U.S.C. § 1361, which asks this Court to compel USCIS to complete the adjudication of the da Fonsecas' Form I-526 petition. Id., ¶¶ 44–51. Defendants now move to dismiss.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief may be granted. In evaluating such a motion to dismiss, courts must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). In other words, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. It follows that a court need not accept as true "a legal conclusion couched as a factual allegation." Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). In making this judgment, the court may consider not only "the facts alleged in the complaint," but also "any documents either attached to or incorporated in the complaint[,] and matters of which [courts] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial

Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). The latter category includes information posted on official public websites of government agencies. See, e.g., Pharm Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs., 43 F. Supp. 3d 28, 33–34 (D.D.C. 2014); Fed. R. Evid. 201(b)(2), 201(d).

### III.   Analysis

The Court will begin with Counts I and III (the unreasonable-delay and mandamus claims), which may be addressed together because the analysis does not differ, before turning to Count II (the arbitrary-or-capricious claim).

### A.   Unreasonable Delay

The da Fonsecas' mandamus and unreasonable-delay claims are identical for present purposes, since this Court may only award relief as to either if the agency unreasonably delayed an action that it is legally required to take. See Kangarloo v. Pompeo, 480 F. Supp. 3d 134, 142 (D.D.C. 2020); Norton v. S. Utah Wilderness All., 542 U.S. 55, 63–64 (2004) (APA claim of unlawfully withheld or unreasonably delayed agency action "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take"); In re Nat'l Nurses United, 47 F.4th 746, 752 (D.C. Cir. 2022) (mandamus not available unless agency violated "crystal-clear legal duty"); Khazaei v. Blinken, 2023 WL 6065095, at *5–6 (D.D.C. Sept. 18, 2023) (discussing this requirement). The two counts, therefore, both turn on two questions: (1) whether the agency was legally required to adjudicate the da Fonsecas' Form I-526 petition, and (2) if so, whether its delay in so doing is unreasonable.

The parties do not devote any attention to that first question, even though it is jurisdictional in the mandamus context. See In re Ctr. for Biological Diversity, 53 F.4th 665, 670 (D.C. Cir. 2022). Instead, they focus exclusively on the second. Because the Court

ultimately agrees with Defendant that the delay was reasonable, meaning that Counts I and III cannot proceed, it will assume without deciding that the agency has a clear and non-discretionary duty to adjudicate a particular individual's Form I-526 petition.  See Chalabi v. Hashemite Kingdom of Jordan, 543 F.3d 725, 728 (D.C. Cir. 2008) (permissible to assume statutory jurisdiction where granting motion to dismiss).

To evaluate the reasonableness of a delay in agency action, courts look to six factors set out in Telecomm's Rsch. & Action Ctr. v. FCC (TRAC), 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. at 80 (internal quotations, citations, and emphasis omitted); see also Da Costa, 80 F.4th at 340 (applying TRAC factors to case of alleged unreasonable delay in Form I-526 processing).

The da Fonsecas protest that the Court should not consult the TRAC factors at this stage because the fact-intensive character of unreasonable-delay and mandamus claims means that ones such as these cannot properly be resolved on a motion to dismiss.  See ECF No. 18 (Opp. to MTD) at 15–16.  If a "record contains enough facts to evaluate the TRAC factors" at the motion-to-dismiss stage, however, a court may do so.  Sarlak v. Pompeo, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (evaluating TRAC factors on motion to dismiss and noting other cases

7

that do the same); see also Sawahreh v. United States Dep't of State, 630 F. Supp. 3d 155, 161 (D.D.C. 2022). Plaintiffs' allegations in their Complaint, along with facts of which the Court may take judicial notice, permit this Court to evaluate the TRAC factors here without discovery.

Those factors cohere into four basic inquiries. "First, is there any rhyme or reason — congressionally prescribed or otherwise — for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?" Rahman v. Blinken, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023) (cleaned up).

1. *Reasonableness (Factors One and Two)*

The first two factors weigh in USCIS's favor. The question here is "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." Ctr. for Sci. in the Pub. Int. v. United States Food & Drug Admin., 74 F. Supp. 3d 295, 300 (D.D.C. 2014). The Court concludes that it does. USCIS's post-2020 rule reasonably calls for prioritizing Form I-526 petitions from immigrants for whom visas are actually available in a given year. Under the previous first-in, first-out rule, "petitioners without visa numbers available would be processed ahead of those with visa numbers available." USCIS, Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach, https://perma.cc/3KQF-CBRJ. The availability method avoids that "hurry up and wait anomaly," Da Costa, 80 F.4th at 341 (internal quotations omitted), and thus is governed by a clear rationale. In recognizing this, the Court is in accord with its prior determination on the same question. See Da Costa v. Immigr. Inv. Program Off., 643 F. Supp. 3d 1, 13 (D.D.C. 2022), aff'd, 80 F.4th 330 (D.C. Cir. 2023),

The da Fonsecas' objections on this point are unavailing. They first posit that the delay was not the result of any "rule of reason" because it is partly attributable to the pause in processing during the nine-month authorization gap, which they think was unlawful. See Opp. to MTD at 19. In their view, the sunset date for the previous authorization of the EB-5 program did not suspend USCIS's authority to continue processing; it retained that power throughout the authorization-gap period, but declined to exercise it. Id. at 6, 9. The Court, however, has previously fielded and rejected this argument. In Da Costa, this Court determined that USCIS's interpretation of its authorizing statute was correct, given Congress's evident purpose to "temporally limit[]" the EB-5 program. Id. at 9–10. The Court stands by that conclusion. The da Fonsecas, like the plaintiffs in Da Costa, also argue that USCIS retained the authority to process Form I-526 petitions during the authorization gap — that is, after the date limit set in § 610(b) of the authorizing statute. See Pub. L. 102-395, 106 Stat. 1828, 1874 (1992). To accept such a contention would require reading § 610(a) as a freestanding and perpetual authorization to process new applications and issue new visas under the EB-5 Regional Center Program, even beyond the explicit limits imposed by § 610(b). The Court declines to adopt that reading, which would render § 610(b) a dead letter. See Da Costa, 643 F. Supp. 3d at 9.

The da Fonsecas counter that USCIS's representations in Behring Reg'l Ctr. LLC v. Mayorkas, 2022 WL 2290594 (N.D. Cal. June 24, 2022), amount to an admission by the agency that it had the legal authority to adjudicate pending petitions during the authorization gap. See Opp. to MTD at 6–9, 13. The Court rejected this argument in Da Costa, 643 F. Supp. 3d at 11, and does so again here. Even if an agency admission in the face of a clear statutory directive could make a difference, there is no such admission here. The Government's position in Behring was simply that during the authorization gap, USCIS retained the authority to continue regulating

9

existing regional centers and processing I-829 forms, which finalize the green-card process for investors for whom a visa has already been set aside. Id. This does not translate into an admission that the Government could have continued to process Form I-526 petitions as well. Based on the plain text of § 610, USCIS could reasonably determine that during the authorization gap, it retained the power to regulate already-designated regional centers and to finalize the application processes for already-approved visas, but that it lacked the power to set aside new visas and adjudicate new petitions under the Program once the time limit set by § 610(b) had run out. See id. As a result, that the delay is partly attributable to the authorization lapse is no ground to find it unreasonable.

Plaintiffs further object that "Defendants offer nothing to show that they have complied with the alleged visa availability rule in this instance." Opp. to MTD at 19. Yet the da Fonsecas themselves make no allegation that USCIS has not complied with the visa-availability rule here. In an unlawful-delay claim, it is for the plaintiff to allege facts that indicate that the agency has unlawfully failed to follow its own policy; absent any such allegations, the agency need not rebut them. Finally, the da Fonsecas suggest that although Congress has not mandated a schedule for I-526 petition processing, the "precatory" 180-day timeline at 8 U.S.C. § 1571(b) should weigh in their favor. See Am. Compl., ¶ 27; Opp. to MTD at 19. This sort of aspirational timeline, however, does not govern, as "[a]bsent a congressionally supplied yardstick, caselaw guides the Court's interpretation." Whitlock v. U.S. Dep't of Homeland Sec., 2022 WL 424983, at *6 (D.D.C. Feb. 11, 2022) (cleaned up).

The duration of the delay here, regardless of whether it was 34 or 43 months, is not without reason. See ECF No. 17 (MTD) at 12. Indeed, this Court and others in this district have generally concluded that immigration delays "in excess of five, six, seven years are

unreasonable, while those between three to five years are often not unreasonable." Mokkapati v. Mayorkas, 2022 WL 2817840, at *6 (D.D.C. July 19, 2022) (cleaned up); see also Da Costa, 643 F. Supp. 3d at 14, 16 (finding that 27-month delay is not unreasonable).

### 2. *Effects of Delay (Factors Three and Five)*

Factors three and five favor the da Fonsecas to a modest degree. The third TRAC factor considers whether "human health and welfare are at stake," in which case judicial intervention is more appropriate, and the fifth factor assesses the "nature and extent of the interests prejudiced by delay." TRAC, 750 F.2d at 80. The Court cannot accord significant weight to the da Fonsecas' allegation that the delay is causing them financial and professional hardship. See da Fonseca Decl., ¶¶ 14–15, 18. Although the financial and professional strains that the family is suffering are no doubt serious, they are the results of risks "inherent in the [I-526] application process." Fangfang Xu v. Cissna, 434 F. Supp. 3d 43, 54 (S.D.N.Y. 2020); cf. Da Costa, 80 F.4th at 345 (finding that financial harms and uncertainty are insufficient to tip factors three and five in plaintiff's favor). Plaintiffs further allege, however, that the long delay has caused stress and anxiety that have manifested in ongoing physical and mental-health problems requiring medication. See da Fonseca Decl., ¶¶ 13, 17. Taking the facts submitted as true, the Court finds that Plaintiffs have made sufficient "allegations linking the delayed adjudication of their petition to health or welfare harms." Da Costa, 80 F.4th at 345.

### 3. *Competing Priorities (Factor Four)*

The fourth TRAC factor considers the effect of granting relief on the agency's competing priorities. This factor is especially important here, and it favors USCIS. The relevant considerations in this case are identical to those addressed in Da Costa, 80 F.4th 343–44. There, the D.C. Circuit explained that granting the plaintiffs relief would simply move them to the front

of the line, ahead of some longer-pending petitions, which would garner the plaintiffs assistance only at the cost of imposing reciprocal burdens on "equally worthy EB-5 visa petitioners who are equally wronged by the agency's delay." Id. at 344 (cleaned up).  This Court also notes that granting the da Fonsecas the relief they seek would "incentivize the creation of a queue of visa applicants within the docket of the federal judiciary to determine the order of the queue for visa applications." Manzoor v. USCIS, 2022 WL 1316427, at *6 (D.D.C. May 3, 2022).  In other words, to grant relief here would be neither fair nor efficient.  The hardship of the da Fonsecas' wait is real, but it is not unique.  To recognize that is not to minimize their difficulties, but to observe them alongside the difficulties of others similarly situated.

The da Fonsecas protest that without discovery, this Court is unable even to tell whether there is a line to jump.  See Opp. to MTD at 20–21.  Such an argument does not persuade.  That there is a serious backlog of Form I-526 petitions is not plausibly in dispute.  See, e.g., USCIS, USCIS Announces New Actions to Reduce Backlogs, Expand Premium Processing, and Provide Relief to Work Permit Holders (Mar. 29, 2022), https://perma.cc/NBW4-6ZAQ; Pharm Rsch. & Mfrs. of Am., 43 F. Supp. 3d at 33–34 (permissible to take notice of information on official websites).  Factor four therefore weighs heavily in USCIS's favor.

    4. *Agency Impropriety (Factor Six)*

Insofar as the da Fonsecas allege that the delay is the result of USCIS's "arbitrary, capricious, *ultra vires*, and otherwise unlawful acts of refusal to timely adjudicate" their petition, see Am. Compl., ¶ 43, they do allege agency impropriety.  But because this allegation rests on the mistaken claim that USCIS lawfully could have adjudicated their Form I-526 petition during the authorization gap but declined to do so, it does not assist Plaintiffs.

\*     \*     \*

The Court acknowledges the hardships that the da Fonsecas have suffered in their long wait for a response to their Form I-526 petition. Four years is no insignificant period of time. But it is not dispositive under applicable law. Because the TRAC factors so strongly favor USCIS, the balance of considerations weighs against judicial intervention at this time.

B. Arbitrary, Capricious, or Unlawful Action

That leaves only the da Fonsecas' second count, which is difficult to parse. To the extent that Plaintiffs are alleging that the unreasonable delay in processing their petition supports an arbitrary-or-capricious claim, that claim could not survive: for the reasons already discussed, the delay is not yet unreasonable. Beyond this, the count contains little in the way of factual allegations that could undergird an independent claim. Plaintiffs allege in passing that Defendants have made unspecified "policy decisions to under-staff the USCIS Immigrant Investor Program Office," Am. Compl., ¶ 42, but offer no elaboration that could raise this claim to the level of plausibility required. To survive a motion to dismiss, a complaint must allege facts that are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. To clear that bar, the da Fonsecas must do more than point out that waiting times for processing have risen dramatically over a period that includes both the nine-month authorization gap and a global pandemic. See Am. Compl. at 2–3, 9–11; Opp. to MTD at 1–2, 6; see also Da Costa, 80 F.4th at 342. While certainly lamentable, the bare fact that waiting times have grown substantially is hardly enough to suggest unlawful decisionmaking on USCIS's part.

Count II also alleges that "Defendants' arbitrary, capricious, *ultra vires*, and otherwise unlawful acts of refusal to timely adjudicate Plaintiffs' Form I-526 petition have caused, and are causing, Plaintiffs ongoing and substantial injuries." Am. Compl., ¶ 43. This, however, is no more than "a legal conclusion couched as a factual allegation," of just the sort that this Court is

13

not bound to accept as true in the absence of freestanding factual claims. Trudeau, 456 F.3d at 193 (citation omitted). In their Opposition, the da Fonsecas contend that "discovery is necessary for the resolution of [Count II's] claim for delay." Opp. to MTD at 10. But the law is clear that discovery is only available to a plaintiff who has pleaded factual allegations sufficient to survive a motion under Rule 12(b)(6). This Court will not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678–79.

Perhaps recognizing that the factual allegations of Count II are thin on the ground, Plaintiffs further contend in their Opposition that it was USCIS's decision not to process Form I-526 petitions during the EB-5 Program's authorization gap, "despite having the legal authority to do so," that constituted arbitrary, capricious, and unlawful action under 5 U.S.C. § 706(2)(A). See Opp. to MTD at 13. That sounds like a new APA claim, which Plaintiffs may not add to their Complaint through an Opposition. See Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv., 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("a complaint may not be amended by the briefs in opposition to a motion to dismiss") (citation omitted). In any event, the Court has already rejected this premise. See Section III.A.1, *supra*; Da Costa, 643 F. Supp. 3d at 9–10.

## IV.  Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: February 9, 2024